**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ADAM T.,

                              Plaintiff,

   v.                                       5:21-CV-1170
                                               (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY.

                                Defendant.

_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
MICHAEL L. HENRY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Senior United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on May 27, 2019. (Administrative Transcript ("T") 14, 220). Plaintiff's application was denied initially on August 10, 2020 (T. 131), and upon reconsideration on December 14, 2020. (T. 139). On April 29, 2021, Administrative Law Judge ("ALJ") John Ramos conducted a hearing during which plaintiff, medical expert Dr. Jeffrey Hansen, and vocational expert ("VE") Marian Marraco testified. (T. 64-106). Plaintiff was represented by non-attorney representative Michael Eason during the

hearing (T. 14), which was conducted by telephone, with plaintiff's consent because of the COVID-19 pandemic. (T. 45). On May 14, 2021, the ALJ issued a decision denying plaintiff's claims (T. 14-24), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 25, 2021. (T. 1-4).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

> next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. Plaintiff has the burden of establishing disability at the first four steps. However, if plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at

3

448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was forty-five years old on the alleged onset date and forty-six years old at the time of the ALJ's decision. (T. 23-24). He graduated from high school where he was given special education assistance in the form of smaller classes, one-on-one learning, and extra time. (T. 84). After high school, he graduated from a two-year community college program and completed heating and cooling training. (T. 245). Plaintiff resides with his wife and his in-laws. (T. 70).

Plaintiff engaged in prior work as a merchandiser, which mainly consisted of "setting up displays and redoing shelves" in grocery stores. (T. 67). Plaintiff testified that his neurologist Dr. Shergelashvilli "pulled [him] out" from working that job due to "medication and other stuff." (T. 67-68). Before working as a merchandiser, plaintiff worked at a big box home improvement store performing tasks such as pushing carts, loading and unloading trucks, and putting together orders for commercial clients. (T. 68-69). He testified that he had to leave this position because of his mother's health. (T. 70).

In 2017, plaintiff experienced his first seizure and "was instructed to avoid warm environments and perform isometric exercise prior to going from sitting to standing position[s]." (T. 73, 690). On March 20, 2020, plaintiff had three consecutive seizures at work causing him to black out. (T. 73). At the time of his hearing, his seizures were controlled by medication. (*Id.*). In August of 2020, plaintiff underwent ninety-nine hours of sleep monitoring but the testing did not indicate any subclinical or subtle seizures. (T. 21).

Plaintiff began experiencing hand tremors in 2017. (T. 71). During the tremors, he is unable to use a spoon, build models, or handle some objects. (T. 78, 82-83). He further testified he probably has one good day per week where he is able to control the tremors, but on bad days he cannot control them at all. (T. 72-73).

There is a substantial amount of medical evidence in the administrative record. Rather than reciting that evidence at the outset, I will discuss the relevant materials in connection with my analysis of plaintiff's claims.

5

## IV. THE ALJ'S DECISION

The ALJ first determined that plaintiff met the insured status requirements for DIB through June 30, 2023. (T. 16). The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 20, 2020. (T. 16). Next, the ALJ found that plaintiff has the following severe impairments: seizure disorder, essential tremor, neuro-cardiogenic syncope, and cardiac arrhythmia. (T. 17). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 19).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") for less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) with the following specific limitations:

> The claimant can sit, stand and walk six hours in eight hour day and can frequently lift or carry up to ten pounds. He should avoid working at unprotected heights, exposure to dangerous machinery, operation of motor vehicle, and extremely warm temperatures, and cannot repetitively move from sitting to standing. He can occasionally handle, finger or feel bilaterally.

(T. 20).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 20). The ALJ further noted that he considered "the medical opinion(s) and

prior administrative medical finding(s)" pursuant to 20 C.F.R. [§] 404.1520(c). (*Id.*). After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*).

The ALJ then determined that plaintiff was unable to perform any of his past relevant work. (T. 23). The ALJ relied upon the VE testimony, and found that "[c]onsidering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 23). Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of March 20, 2020, through the date of the ALJ's decision. (T. 24).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision was not supported by substantial evidence:

1. The ALJ failed to develop a full and fair record. (Plaintiff's Brief ("Pl.'s Br.") at 11-12) (Dkt. No. 11).

2. The ALJ improperly assessed the medical opinion evidence. (Pl.'s Br. at 8-9).

3. The ALJ erred at step five. (Pl.'s Br. at 22).

The Commissioner contends that the ALJ's disability determination is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 7-13) (Dkt. No. 14). For the following reasons, this court agrees with the defendant, and recommends that the

7

district court affirm the Commissioner's decision.

## VI.   RFC/EVALUATING MEDICAL EVIDENCE/DEVELOPING RECORD

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days per week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb. 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory

statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.     Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

9

sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has

10

found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing." *Id.* (citing *Cullinane v. Sec'y. of Dep't of Health and Hum. Servs. of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")). Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851(ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (quoting *Champion v. Berryhill*, No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept.

11

14, 2017) (other citations omitted)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records."  *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

### B. Analysis

#### 1. Duty to Develop Record

Plaintiff argues that hearing testimony from independent medical expert, Dr. Jeffrey N. Hansen, concerning the plaintiff's ability to lift, handle, finger, and feel items is purely speculative and the ALJ should have instead obtained a neurologist's opinion on plaintiff's functional limitations.  (Pl.'s Br. at 9, 11).  Plaintiff further asserts that the ALJ was required to develop the record further because there are no opinions of record from a treating physician or a neurologist regarding plaintiff's functional limitation. (Pl.'s Br. at 11).

Plaintiff alleged that his seizures and shaky hands syndrome limits his ability to work.  (T. 244).  Dr. Hansen did not examine the plaintiff but did review the plaintiff's entire medical record before testifying.  (T. 89-90).  In addition to Dr. Hansen's

testimony, the ALJ consulted treatment records from treating neurologist Dr. Tea Shergelashvilli, treatment records from his primary care provider, diagnostic studies and clinical findings from the plaintiff's hospital records, two medical opinions from state-agency consulting physicians, and the plaintiff's testimony regarding his symptoms, limitations, and daily activities.  (T. 21-22 (citing 1F, 2F, 3F, 4E, 4F, 7F, 6F, 9F, 12F, 13F, 15F)).  The ALJ made a "reasonable effort to help" plaintiff develop the record on this issue by bringing in Dr. Hansen, who is a board certified orthopedic surgeon, to provide expert testimony.  (T. 89).

Based on this record, the ALJ found "[plaintiff's] treatment history does not support the [plaintiff's] allegations regarding the intensity, persistence, and limiting effects of his conditions."  (T. 21-22).  First, the ALJ found plaintiff's seizures "are noted to be well controlled," with none documented after March 20, 2020.  (T. 21, 475, 712).  Second, "plaintiff has had this condition for years and was able to work, despite this condition."  (T. 21).  Third, plaintiff testified he was not taking any medication for his hand tremors, although the ALJ did acknowledge that the medication for the tremors was "deferred pending change of his seizure medications."  (T. 21, 717).  Finally, the ALJ noted plaintiff "testified his physician told him not to work, due to tremors, but this [was] not reflected anywhere in the record []."  (T. 22).

Here, plaintiff's daily activities show plaintiff was able to handle, finger, or feel bilaterally at least frequently.  (T. 22).  Plaintiff's hobbies include "gardening, TV, video games, puzzles and Legos."  (T. 22).  Most of these hobbies require more than frequent handling, fingering, or feeling bilateral objects.  Further, plaintiff reported that

he could lift twenty pounds, although the ALJ's RFC determination limits plaintiff to only lifting ten pounds. (T. 20).

Dr. Hansen's testimony was the only medical opinion regarding plaintiff's functional limitations, as neither the treating physician nor the treating neurologist provided such an opinion. (Pl.'s Br. at 11). In addition to the medical record, the ALJ found plaintiff's "reported activities of daily living do not support his allegations" because they "support a greater functional ability." (T. 22). For example, he reported "he could lift 20 lb., walk 4 miles," does not have difficulty fastening buttons, and does not drop things on a regular basis. (T. 22, 267).

Beyond the substance of his testimony, plaintiff challenges Dr. Hansen's opinion on the grounds that he was an orthopedic specialist and the ALJ should have obtained a neurologist instead. (Pl.'s Br. at 11). "[H]owever, there is no legal authority that prohibits an ALJ from relying on the opinion of a non-specialist, non-examining physician." *Sarah C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *19 (N.D.N.Y. Mar. 29, 2021). Under the new regulations, specialization is merely one of the five factors the ALJ considers when evaluating medical opinions. *See* 20 C.F.R. § 404.1520c(c). During the hearing, Dr. Hansen testified he was "somewhat familiar with the neurological section, 11.00 of the listings" because it involves effects covered in his speciality. (T. 90-91). Additionally, he testified he has seen patients with hand tremors during his work as a hand surgeon.[1] The ALJ specifically noted that "his

---

[1] Dr. Hansen did testify that the hand tremors he saw were "mostly treated with medications" instead of surgery. (T. 91).

14

medical training and experience [was] sufficient to allow him to testify on the issues." (T. 22). Thus, this court finds that the ALJ appropriately considered Dr. Hansen's specialization when deciding how much weight to give his testimony.

Additionally, plaintiff has not identified, nor has this court's found in the record, any conflicting evidence that would require the ALJ to develop the record further. *Cf. Beckwith v. Colvin*, No. 6:13-CV-01095 MAD, 2015 WL 799865, at *12 (N.D.N.Y. Feb. 25, 2015) (finding an affirmative duty to develop the record where there was a conflict within the treating physician's records). Therefore, the ALJ fulfilled his affirmative duty to develop the record because the "the ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *Luz D. C. v. Saul*, No. 3:20-CV-500, 2021 WL 6883826, at *15 (D. Conn. Aug. 20, 2020)

### 2. Evaluation of Medical Opinion Evidence

For the following reasons, the court finds that the ALJ properly considered Dr. Hansen's testimony, and his conclusion regarding its persuasiveness was supported by substantial evidence. As discussed above, there is nothing improper about an ALJ finding a non-specialist, non-examining opinion persuasive. It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining expert in disability claims. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate

15

circumstances); *Christy v. Comm'r of Soc. Sec.*, 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 at *5853 (discussing how under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content).

Plaintiff alleges that the ALJ also erred in considering the supportability factor because "the ALJ does nothing more than generally refer to the 'overall record.'" (Pl.'s Br. at 10). Plaintiff correctly notes that, in the paragraph discussing supportability and consistency of Dr. Hansen's opinion specifically, the ALJ did only reference the overall medical record. (T. 22). However, the court notes that the ALJ engaged in a thorough discussion of the record evidence in the preceding pages. (T. 21-22). The ALJ's "explanation must be viewed against the backdrop of the discussion of the treating records that preceded it." *Jeanette J. v. Saul*, 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020). It is therefore "proper to read the ALJ's decision as a whole" to avoid the "needless formality to have the ALJ repeat substantially similar factual analyses." *Id.*

The ALJ also noted plaintiff's relevant activities of daily living, such as cooking, making models, home remodeling, and painting that he was able to perform despite the hand tremors. (T. 22). The plaintiff testified that it took him longer to do some of these tasks, but the ALJ accommodated this by limiting plaintiff to occasional fine manipulation. (T. 20, 22, 87). The ALJ noted plaintiff testified that he dropped things, but did not do that on a regular basis. (T. 22, 78).

Therefore, a searching review of the record assures this court that the medical evidence was properly evaluated. While the ALJ could have expressed his findings more clearly by specifically noting that Dr. Hansen's restrictions concerning use of heavy machinery, exposure to heights, and driving were consistent with treating neurologist Dr. Shergelashvilli's restrictions (T. 22, 95, 542), the ALJ still showed he considered the consistency factor by noting Dr. Hansen's testimony is consistent with the overall record. (T. 22).

Plaintiff also argues that Dr. Hansen's testimony should be given less weight because he changed his mind on the lifting requirement in the middle of his testimony at the hearing. (T. 9-10). This resulted in giving plaintiff a more restrictive lifting limitation than what plaintiff claimed he was capable of performing. (T. 20, 22, 267). Even if the ALJ did commit error, which the court finds he did not, it was harmless since the ALJ's RFC finding was more favorable to plaintiff. *See Nesevitch v. Colvin*, No. 3:15-CV-935, 2016 WL 5717270, *16 (N.D.N.Y. Sept. 30, 2016) (finding that any error the ALJ committed by relying on physician's opinion was harmless because the ALJ assessed a more restricted RFC than the opinion proposed); *Shorter v. Comm'r of Soc. Sec.*, No. 5:12-CV-1502 (NAM/ATB), 2014 WL 1280459, *10 (N.D.N.Y. Mar. 27, 2014) (finding that "[i]n light of the other substantial evidence in the record supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than [the state agency consultant's] assessment, any error in considering this report was harmless" (citing *Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010) (finding that remand is unnecessary, notwithstanding a legal error, where a correct

17

application of legal rules to the record will only lead to the same conclusion))).

The ALJ's analysis of the overall treatment record, the medical opinion evidence, and plaintiff's own description of his functional limitations allows for meaningful review because this court is able to glean the rationale of the ALJ's decision. *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (holding that "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.") (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)).

To the extent that plaintiff disagrees with how the ALJ weighed the evidence, it is not the proper role of this court to reweigh that evidence. *Shyla D. v. Kijakazi*, No. 3:20-CV-1295 (DJS), 2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (collecting cases). Where, as here, "the ALJ's conclusions find reasonable support in the record, courts 'will defer to the ALJ's resolution' regarding the appropriate weight to be afforded to various medical opinions." *Id.* (quoting *Teresa L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-682, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020)).

### 3.   Step Five Determination

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may

rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on a RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.  Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination that plaintiff was not disabled, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 3, 2023

_____
Andrew T. Baxter
U.S. Magistrate Judge